UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

COURTNEY J. JAMES,

        Petitioner,

    v.                                            Case No. 18-C-1418

RANDALL HEPP,

        Respondent.

## DECISION AND ORDER DENYING PETITION

Petitioner Courtney J. James filed a petition for federal relief from his state conviction pursuant to 28 U.S.C. § 2254 on September 11, 2018. He was convicted in the Circuit Court of Milwaukee County of one count of first-degree reckless homicide and one count of first-degree recklessly endangering safety, both with use of a dangerous weapon and as a party to the crime. He was sentenced to thirteen years and six months of initial confinement and five years of extended supervision for the first-degree reckless homicide count and seven years and six months of initial confinement and five years of extended supervision on the first-degree recklessly endangering safety count, both to be served consecutively to each other and any other sentence. James is currently incarcerated at Fox Lake Correctional Institution. In his petition, James asserts that his conviction and sentence were imposed in violation of the United States Constitution. For the reasons that follow, the petition will be denied and the case dismissed.

### BACKGROUND

The State of Wisconsin charged James in 2012 with first-degree recklessly endangering safety and first-degree reckless homicide, both as party to a crime and while using a dangerous

weapon. These charges stemmed from two shooting incidents that occurred on February 3, 2012. Earlier that day, James' brother, Erosa James, got into a verbal altercation with a woman, S.P. Afterwards, S.P.'s brother, Artaze Williams, fought and injured Erosa. James was observed on surveillance cameras dropping Erosa off at the hospital and leaving shortly thereafter. Approximately one hour later, shots were fired into S.P.'s house.

Later that afternoon, James was seen on surveillance cameras returning to the hospital. James and Erosa were seen leaving the hospital walking toward a burgundy Jeep. The second shooting occurred approximately an hour after James and Erosa left the hospital. Police responded to a report of the homicide, and found Williams seated in the driver's seat of his vehicle with fatal gunshot wounds. Coria Stotts was a passenger in Williams' vehicle. She reported that before he was shot, Williams told her that he had been in an altercation with a man that robbed his sister. Stotts subsequently identified Erosa as the man who shot Williams. A witness in a residence across the street saw a dark-colored sports utility vehicle which matched the general description of the burgundy Jeep James was seen driving earlier at the hospital. The witness saw a man on the outside of the vehicle who appeared to be trying to watch someone without being seen. The man said something to the driver of the Jeep and then proceeded to shoot Williams. Upon searching the Jeep several days later, police recovered an unfired 9mm cartridge that matched the spent shell casings found at the scene of Williams' murder and a receipt for a bill relating to the phone number of James' cell phone. Cell phone towers in the vicinity showed usage of James' cell phone both at the time of and in the vicinity of the two shootings.

The case proceeded to a four-day jury trial, and the jury convicted James of both first-degree recklessly endangering safety and first-degree reckless homicide as a party to the crime. James, who was represented by counsel, appealed to the Wisconsin Court of Appeals. He argued

that the circuit court erred when it concluded that the State's peremptory strikes of an African-American male juror did not violate *Batson v. Kentucky*, 476 U.S. 79 (1986). On August 25, 2015, the court of appeals rejected James' claim and affirmed his conviction. In so ruling, the appellate court upheld the trial court's finding that the prosecutor's exercise of a peremptory strike of an African American juror did not show purposeful racial discrimination. *State v. James*, No. 2014AP2230-CR (Wis. Ct. App. Aug. 25, 2015), Dkt. No. 13-4. The Wisconsin Supreme Court denied James' petition for review on November 4, 2015. Dkt. No. 13-7.

On November 16, 2016, James, proceeding pro se, filed a post-conviction motion pursuant to Wis. Stat. § 974.06. In this motion, James argued that he was entitled to relief because there was insufficient evidence to sustain his conviction and because his post-conviction attorney provided ineffective assistance for failing to challenge his trial counsel's performance. James asserted that his trial counsel was ineffective in (1) failing to move for dismissal on grounds of insufficiency of the evidence; (2) failing to move for the suppression of an out-of-court identification made by a witness for the State and failing to call the police officer involved in that identification to impeach the officer's character; (3) failing to introduce an improper coercive statement allegedly made to James by police during the investigation; (4) failing to investigate and present alibi witnesses; (5) failing to challenge cell phone evidence; (6) failing to challenge ballistics evidence; and (7) failing to object to alleged juror bias. The circuit court denied James' motion without an evidentiary hearing and concluded James' claim of ineffective assistance of trial counsel failed on the merits. The court of appeals affirmed. *State v. James*, No. 2016AP1421 (Wis. Ct. App. Dec. 5, 2017), Dkt. No. 13-10.

On January 25, 2018, James filed a petition for review with the Wisconsin Supreme Court. In his petition, James asserted that (1) the court of appeals' decision conflicted with decisions of

the Wisconsin Supreme Court with respect to whether James' claims were clearly stronger than those raised by appellate counsel, (2) the post-conviction court and court of appeals failed to address his ineffective assistance of trial counsel claims, (3) the post-conviction court and court of appeals ignored critical factual assertions contained in his post-conviction motion, (4) the post-conviction court and court of appeals erred in denying James' post-conviction motion without an evidentiary hearing, and (5) the court of appeals' decision conflicts with controlling precedent regarding the ineffective assistance of counsel claims presented. Dkt. No. 13-12. The Wisconsin Supreme Court denied James' petition for review on April 9, 2018.

## ANALYSIS

James' petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.*

This is, and was meant to be, an intentionally difficult standard to meet. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petition is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in

4

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington*, 562 U.S. at 103).

In addition to the merits of James' claims, the court must consider whether his claims have been procedurally defaulted. A state prisoner can procedurally default a federal claim in one of two ways. *See Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). First, the state may decline to address a claim because the prisoner did not meet certain state procedural requirements. A state prisoner may also procedurally default a federal claim by failing to exhaust his remedies in state court before seeking relief in federal court. *See Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018) (citing *Thomas*, 822 F.3d at 384; 28 U.S.C. § 2254(b)(1)(A)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To exhaust state remedies in the Wisconsin courts, the state prisoner must include his claims in a petition for leave to appeal to the Wisconsin Supreme Court. "Procedural default may be excused . . . where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Thomas*, 822 F.3d at 386 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

James' habeas petition asserts that there was insufficient evidence to support his conviction as well as a number of ineffective assistance of trial counsel and ineffective assistance of post-conviction counsel claims. The court will address James' claims in turn.

**A. Insufficiency of Evidence**

James claims there was insufficient evidence to support his conviction. Respondent contends that this claim is procedurally defaulted because James did not allege in his petition for

5

review that there was insufficient evidence to support his conviction. James has not shown why he could not have included this claim in his petition for review. Therefore, this claim is defaulted and will not be reviewed by this court.

**B. Ineffective Assistance of Counsel**

James asserts that his trial counsel was ineffective for failing to (1) move to dismiss the case due to insufficient evidence, (2) suppress an out-of-court identification made by a State witness, (3) introduce coercive statements by the police during the investigation, (4) call two alibi witnesses, (5) challenge certain cell phone evidence, (6) challenge ballistics evidence, and (7) properly challenge juror bias. He also asserts that appellate counsel was ineffective in failing to raise these issues on direct appeal.

A claim of ineffective assistance of trial counsel is governed by well-established law set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must show that (1) counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) counsel's deficient performance deprived the defendant of a fair trial. *Id.* at 687–88. A petitioner satisfies the first prong if he demonstrates that "counsel's representation fell below an objective standard of reasonableness." *Id.* To satisfy the second prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particularized act or omission of counsel was unreasonable." *Id.* at 689. For this reason, the Supreme Court has made clear that "judicial scrutiny of counsel's performance must be highly deferential." *Id.* That is, "a court must indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Respondent contends that all of James' ineffective assistance of trial counsel claims are procedurally defaulted. Here, James did not specifically allege in his petition for review filed with the Wisconsin Supreme Court that his trial counsel was ineffective because she failed to move to dismiss the case due to insufficient evidence and failed to introduce coercive statements by the police during the investigation. Again, James has not demonstrated why he could not have included these claims in his petition for review. In short, these claims are defaulted, and this court will not review their merits.

The court finds that James' remaining ineffective assistance of trial counsel claims are not defaulted, however, because they were properly raised in James' petition for review. In his petition, James asserts that the post-conviction court and court of appeals failed to address his ineffective assistance of trial counsel claims, explains why trial counsel was ineffective, and requests that the Wisconsin Supreme Court accept review of the case to address these issues. *See* Dkt. No. 13-12 at 7–9. Therefore, these claims were not procedurally defaulted.

**1. Trial counsel's failure to suppress a witness's out-of-court identification**

James argues that counsel was ineffective in failing to suppress an out-of-court identification made by Charles Hierrezuelo, a witness for the State. James also asserts that the police officer involved in the identification was dishonest and that his trial counsel should have called the officer as a witness to impeach his character. The court of appeals found that James'

trial counsel was not ineffective because James had not established that he suffered prejudice. The court explained:

> In the out-of-court identification, Hierrezuelo had identified James as possibly being the shooter at S.P.'s residence. However, Hierrezuelo testified at James's trial that James was not the shooter at S.P.'s home. As this was favorable testimony for James's case, the postconviction court "fail[ed] to perceive" how trial counsel's failure to move to suppress this testimony could have prejudiced James. Furthermore, the court found that James's reasons for having wanted to call the police officer involved in the identification by Hierrezuelo were irrelevant to the issues before the jury.
>
> We agree with the postconviction court that James was not prejudiced by his trial counsel's lack of action with regard to these issues. Therefore, James has failed to demonstrate ineffective assistance for this claim.

Dkt. No. 13-10 at 10 (alterations in original). It is difficult to see how the state court acted in contravention of controlling Supreme Court precedent. I therefore cannot conclude that the court of appeals misapplied Strickland in handling this issue.

**2. Trial counsel's failure to call two alibi witnesses**

James also argues that counsel should have called two alibi witnesses at trial. In his post-conviction motion, James alleged that his trial attorney provided ineffective assistance in failing to adequately investigate his alibi witnesses. James presented affidavits from Sherman Williams and Deandre Johnson, both of whom he asserts should have been called to testify at trial. Williams claims that the cell phone number that James gave to police actually belonged to him and that the phone was in his possession at the time of the shootings. Dkt. No. 13-8 at 113. Johnson claimed that he was with James from 4:30 p.m. until midnight on the date of the shootings. He also asserted that his mother owned the burgundy Jeep implicated in the shooting and that James "was not operating or using the 1993 Jeep Grand Cherokee at 1:30pm or 5:20pm on February 3, 2012." *Id.* at 110.

8

The trial court denied James' motion without a hearing, reasoning that James only provided conclusory allegations to support his ineffective assistance of counsel claim. The court found that Williams' affidavit was too conclusory and self-serving for the court to assess James' claim because the affidavit did not include any attachments or documentary support for Williams' assertions that the cell phone number (414) 236-6360 belonged to him and that the cell phone was in his possession during the entire day on February 3, 2012. Williams did not explain why a receipt for the cell phone bill was in the burgundy Jeep. The court also observed that the affidavit did not contain sufficient biographical information about Williams to confirm his identity and noted that DOC records include a number of individuals that share this name, including at least one individual housed at the same institution as James. Dkt. No. 13-8 at 63.

As to Johnson's affidavit, the court found that this affidavit was more "glaring in its omissions than what it proffer[ed]." *Id.* The court explained that, although Johnson claimed to have personal knowledge of the whereabouts of the burgundy Jeep at the time of the shootings, he did not state the basis for his personal knowledge. It noted that James was seen on video leaving St. Joseph's Hospital at 4:11 p.m. with his brother in the vehicle that belonged to Maxine Johnson, Johnson's mother; that Maxine Johnson testified at trial that the vehicle was lent exclusively to James at the time of the homicide; and that a shell casing and magazine matching that used in the homicide were found in the Jeep. Johnson did not state who was using the vehicle at the time of the shootings, where the vehicle was throughout the course of the day on February 3, 2012, when James was using the vehicle on the date of the shootings, or why the vehicle was parked in front of James' mother's home three days after the shooting if it was not lent to him as Maxine Johnson testified. Johnson did not explain why his mother would have testified that the vehicle was lent exclusively to James or why a receipt for the bill to the phone number James

9

gave the police and a 9mm casing matching the firearm used in the homicide ended up in the Jeep. The court concluded that the conclusory allegations, without more, were insufficient to warrant an evidentiary hearing.

The Wisconsin Court of Appeals also rejected these claims of ineffective assistance of trial counsel as conclusory and unsupported because James' claims were not supported by facts that would require holding an evidentiary hearing. In particular, the court found that James' claims pertaining to the alibi witnesses lacked sufficient material facts that, if true, would show that James was entitled to relief, and he was therefore not entitled to an evidentiary hearing. Under Wisconsin law, a trial court has discretion to deny a motion for post-conviction relief without a hearing where the movant fails to allege facts that, if true, would entitle him to relief. *See State v. Allen*, 2004 WI 106, ¶ 14, 274 Wis. 2d 568, 682 N.W.2d 433 ("A hearing on a postconviction motion is required only when the movant states sufficient facts that, if true, would entitle the defendant to relief."). Dismissal for this reason constitutes an adequate and independent state ground for denying a petitioner relief that precludes federal review under § 2254. *See Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014) (noting that "[t]he *Allen* rule is a well-rooted procedural requirement in Wisconsin and is therefore adequate." (citations omitted)). The court finds that the state procedural requirements relied on by the Wisconsin Court of Appeals to reject this claim are adequate and independent grounds for denying relief.

Even if James' claims were not procedurally defaulted, the court concludes that he is not entitled to relief. As noted by the state courts, the statements contained in the affidavits were contradicted by the evidence presented at trial. During trial, the State elicited testimony establishing that James told police his cell phone number was (414) 236-6360, that hospital surveillance video showed James driving the burgundy Jeep shortly before Williams was shot,

and that Johnson's mother lent the Jeep to James. Moreover, James has not presented evidence that he provided the information regarding Williams or Johnson to his trial counsel. The record is silent as to whom he provided the information to, when he did so, and how he provided the information. The Wisconsin Court of Appeals' determination was not contrary to and did not involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Nor was it based on an unreasonable determination of the facts in light of the evidence presented in state court. In sum, James is not entitled to habeas relief on this claim.

### 3. Trial counsel's failure to challenge cell phone evidence

James asserts his trial counsel rendered ineffective assistance because she failed to challenge certain cell phone evidence admitted at trial. Officer Draeger, a police officer trained as a technical investigator, whose primary assignment is analyzing cell phone records, testified as an expert for the State at James' trial. In his post-conviction motion, James asserted that Officer Draeger is not a cell phone expert. The trial court rejected James' claim because it was conclusory and failed to address the facts presented at trial. The court noted that Officer Draeger testified that he had specialized training and expertise in dealing with cell tower evidence, including separate training with every major phone company that provides cell tower evidence, and that he had previously testified as an expert in this field on twelve occasions. James did not offer any evidence to undermine Officer Draeger's credibility. The Wisconsin Court of Appeals upheld the trial court's denial of this claim without a hearing, reasoning that James had failed to refute the officer's experience. Again, dismissal for this reason constitutes an adequate and independent state ground for denying a petitioner relief that precludes federal review under § 2254, *Lee*, 750 F.3d at 694, and James has not established cause for the default and resulting prejudice or that a

fundamental miscarriage of justice would result if this court did not consider his claims on the merits.

### 4. Trial counsel's failure to challenge ballistics evidence

James also argues that counsel should have challenged ballistics evidence presented at trial and should have hired a ballistics expert to refute this evidence. James asserts that the evidence relating to the 9mm cartridge found in the burgundy Jeep should not have been admitted into evidence because it could have been placed in that vehicle at any time. The court of appeals concluded that James failed to demonstrate ineffective assistance for this claim because his argument "ignores the fact that the cartridge was found in a vehicle suspected of being used in a homicide three days after that homicide had occurred, and that it matched the casings that had been ejected from the gun used in that homicide." Dkt. No. 13-10 at 13. As to James' claim that trial counsel should have hired a ballistics expert, the court of appeals found that "James does not establish that another ballistics expert would have testified favorably for the defense; therefore, he has not shown that he was prejudiced by this lack of action on the part of his trial counsel." *Id.* The state court's conclusions were reasonable and do not represent an unreasonable application of *Strickland*.

### 5. Trial counsel's failure to properly challenge juror bias

James argues that trial counsel was ineffective in failing to properly challenge the issue of juror bias in accordance with *Batson v. Kentucky*, 476 U.S. 79 (1986). In *Batson*, the Supreme Court stated that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure," and thus, "the State's privilege to strike individual jurors through peremptory challenges[] is subject to the commands of the Equal Protection clause." 476 U.S. at 86, 89. The

*Batson* Court articulated a three-step process for analyzing a defendant's claim that improper racial considerations motivated the State's peremptory strike of a juror. First, the defendant must make a prima facie showing that the State engaged in purposeful discrimination in jury selection. *Id.* at 96–98. Once the defendant makes this prima facie showing, "the burden shifts to the State to come forward with a neutral explanation" for striking the juror. *Id.* at 97. The trial court must then "determine if the defendant has established purposeful discrimination." *Id.* at 98. The Seventh Circuit has recognized that direct review of a *Batson* claim is subject to deference to the trial court's findings of fact, since the trial court is in the best position to determine credibility. *See Harris v. Hardy*, 680 F.3d 942, 960 (7th Cir. 2012). "On federal habeas review, however, the standard is even more demanding." *Id.* (citing *Miller-El v. Dretke*, 537 U.S. 322, 339–40 (2003)).

James' jury venire consisted of 35 individuals, seven of whom, like James, appeared to be African American: Jurors 3, 6, 14, 21, 22, 24, and 35. During voir dire, the prosecutor asked the panel whether any of the jurors had "a strong feeling about police officers, one way or the other?" Dkt. No. 13-28 at 16. Jurors 6, 21, and 22 raised their hands in response. The prosecutor repeated his question to Juror 6, and Juror 6 explained that he has trust issues with the police that are "not positive." *Id.* Juror 22 also stated that his feelings are "kind of negative" and indicated that his feelings would affect him when listening to an officer or detective's testimony. *Id*. at 21. The prosecutor then asked if Juror 22 could put his negative feelings aside, and Juror 22 replied, "No, not really." *Id.* The prosecutor also asked Juror 21 whether his strong feelings about police officers were "positive or negative." *Id.* at 20. Juror 21 responded that his feelings toward most officers were "negative" and he believed that, based on their employment, police are probably not telling the truth. *Id.* He nevertheless indicated that he could put his feelings aside and come to the case impartially.

13

At a side-bar conference held off the record, the prosecutor moved to strike Jurors 6, 21, and 22 for cause. Defense counsel agreed with the motion as to Jurors 6 and 22 but objected to striking Juror 21 for cause. The trial court granted the motion to strike Jurors 6 and 22 for cause but not Juror 21. The State then used its peremptory strikes to remove two African-American jurors, Jurors 14 and 21, leaving two African-American jurors on the panel.

Defense counsel indicated she agreed with the prosecutor's requests to strike for cause, except for Juror 21, and did not object to the prosecutor using a peremptory strike on Juror 21 because he said he had negative feelings about police. She did, however, raise an objection pursuant to *Batson* to the peremptory strike of Juror 14 because Juror 14 said nothing that would suggest he could not be fair. The prosecutor explained that he used a peremptory strike for Juror 14 because he had "reactions" during the voir dire that caused the prosecutor to believe Juror 14 was "not disposed to listening to the State if not potentially hostile" and could not be "fair and impartial toward the State's position." *Id.* at 65–66. The prosecutor explained that he also used a peremptory strike to remove Juror 2, a white male, for the same reason. The trial court analyzed the prosecutor's peremptory challenges under *Batson*. It found that there was "not a prima facie case of purposeful discrimination," that the prosecutor had provided a clear explanation for his peremptory strike of Juror 14, and that James did not prove the prosecutor purposefully struck Juror 14 based on his race under the totality of the circumstances. *Id.* at 68.

On direct appeal, James asserted that the trial court erred when it concluded that the prosecutor's peremptory strike of Juror 14, an African American male, was not a violation of *Batson*. On appeal, the Wisconsin Court of Appeals affirmed the trial court's decision. *See State v. James*, No. 2014AP2230-CR (Wis. Ct. App. Aug. 25, 2015), Dkt. No. 13-4. Applying the *Batson* framework, the court of appeals found that James had not shown that the facts and relevant

14

circumstances raise an inference that the prosecutor exercised its peremptory strike to exclude Juror 14 on account of race and that the trial court's finding that the prosecutor offered a race-neutral reason for the strike was not clearly erroneous. The court noted the deference owed to the trial court, as the trial court is in the best position to determine the credibility of the State's race-neutral explanations. The court of appeals also concluded that the trial court's finding that James failed to prove purposeful racial discrimination was not clearly erroneous.

In his habeas petition, James does not challenge the *Batson* decision. Instead, he asserts that his trial counsel provided ineffective assistance by failing to properly challenge the issue of juror bias. The court of appeals rejected this claim. *See State v. James*, No. 2016AP1421 (Wis. Ct. App. Dec. 5, 2017), Dkt. No. 13-10. The court of appeals noted that James' claim of ineffective assistance by his trial counsel is essentially the same argument presented by appellate counsel in James' direct appeal. The court of appeals concluded that the trial court properly analyzed James' *Batson* claim and that the trial court's conclusion was not clearly erroneous. Because the court of appeals affirmed the trial court's decision and found no violation of *Batson*, it concluded trial counsel was not ineffective in failing to challenge the issue of juror bias. The court of appeals' decision was not contrary to, or an unreasonable application of, federal law. James does not indicate what counsel should have done differently in making and arguing the *Batson* challenge. Accordingly, James' claim that counsel was ineffective in failing to properly challenge jury bias will be denied.

**6. Ineffective assistance of appellate counsel**

James also asserts that he received ineffective assistance of appellate counsel because counsel failed to assert that his trial counsel was ineffective. The court of appeals concluded that without a successful argument that trial counsel provided ineffective assistance, James is unable

15

to demonstrate that his appellate counsel was ineffective. The court also noted that James failed to overcome the additional burden of proving that the ineffective assistance of counsel claims asserted in his post-conviction motion were clearly stronger than the *Batson* challenge made on direct appeal through his appellate counsel. The court found that James did not make a cogent argument and instead made only conclusory statements that he met this burden. James cannot establish ineffective assistance of appellate counsel for failing to pursue claims on which he would not be entitled to relief. Accordingly, these claims are also dismissed.

## CONCLUSION

For the reasons given above, James is not entitled to federal habeas relief on any of his claims. His petition for a writ of habeas corpus is therefore **DENIED**, and the Clerk is directed to enter judgment dismissing the case. A certificate of appealability will be **DENIED**. I do not believe that reasonable jurists would believe that James has made a substantial showing of the denial of a constitutional right.

James is advised that the judgement entered by the Clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. App. P. 3, 4. In the event James decides to appeal, he should also request that the court of appeals issue a certificate of appealability. Fed. R. App. P. 22(b).

**SO ORDERED** at Green Bay, Wisconsin this 3rd day of December, 2019.

                                                  s/ William C. Griesbach
                                                  William C. Griesbach, District Judge
                                                  United States District Court